IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JASEYONA SAGE THOMAS,<br><br>Defendant. | Case No. 1:24-cr-137<br>Case No. 1:24-cr-138<br><br>**UNITED STATES' SENTENCING MEMORANDUM** |

The United States of America, by Nicholas W. Chase, United States Attorney for the District of North Dakota, and Rick L. Volk, Assistant United States Attorney, has no objections or corrections to the Pre-Sentence Investigation Report ("PSR") in this case. The United States recommends the Court adopt the PSR, including the Guideline calculations and factual statements contained therein, at the sentencing hearing.

STATUTORY PENALTIES

Defendant has pled guilty to Count One of the Indictment in each of the above-captioned matters, charges of Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances in violation of 21 U.S.C. § 846. Defendant was not charged with a specific drug quantity establishing any minimum prison term with respect to this offense. Therefore, the maximum statutory penalty is 20 years imprisonment, a fine of up to $1,000,000, Lifetime supervised release, and a $100 special assessment as to each charge. (Doc. 113 – PSR, ¶¶ 70, 73, 78, 79) The Court must impose a term of supervised release of at least 3 years. (Doc. 113 – PSR, ¶ 73) Multiple terms of supervised release shall run concurrently. (Doc. 113 – PSR, ¶ 74)

## GUIDELINES

The PSR in this case determined a total adjusted offense level of 29, criminal history category IV (based upon 9 criminal history points), and advisory Guideline sentencing range of 121 – 151 months within Zone D of the sentencing table. (Doc. 169 – PSR, ¶¶ 32, 45, 71) The United States agrees this calculation is correct and requests the Court adopt the same at the sentencing hearing.

## DEFENDANT'S OBJECTION TO USSG § 2D1.1(b)(13)

Defendant has objected to the Probation Officer's application of USSG § 2D1.1(b)(13)(A), which imposes a four-level upward adjustment if a defendant knowingly misrepresented or knowingly marketed as another substance a mixture or substance containing fentanyl or a fentanyl analogue. (PSR ¶ 24) The PSR notes the upward adjustment was applied because "the pills were marked to represent 'M30' pills, and [Defendant] knew they contained fentanyl." (PSR ¶ 24) The Probation Officer further clarified in the Addendum that the pills Defendant distributed were manufactured to look like prescription oxycodone pills (blue, stamped with "M30"), and Defendant admitted during her PSR interview she knew the pills were so marked but contained fentanyl. (PSR, Addendum)

Defendant has not objected to these factual statements. Defendant has only objected to the Probation Officer's application of the upward adjustment, noting besides the markings on the pills, Defendant never held out the controlled substances to be anything other than fentanyl and the people she was selling it to were knowingly

purchasing fentanyl. (PSR, Addendum – Objection # 1) Despite this objection, the upward adjustment should yet apply in this case.

Markings on pharmaceutical pills or tablets are not randomly applied. All approved prescription and over-the-counter solid, oral dosage form medications in the United States are required by the Food and Drug Administration (FDA) to have an "imprint." See 21 C.F.R. § 206.10. The imprint is a product-specific code that in conjunction with the product's size, shape, and color, permits the identification of the drug product and its manufacturer or distributor. Id.

The pills / tablets distributed by Defendant in this case were blue-in-color, round or oval, and contained a block-M 30 imprint on them. (PSR, Addendum) These characteristics (round, blue-in-color, block-M 30) are the FDA-approved imprint designated for a specific 30 mg oxycodone tablet manufactured by Mallinckrodt Pharmaceuticals. See Government Exhibit 1. Fentanyl can be dispensed in tablet form, called "Fentora," for cancer treatment as a buccal or sublingual tablet. See Government Exhibit 2. However, Fentora is neither blue nor imprinted with a block-M 30 imprint. Id. A Fentora tablet looks nothing like the fentanyl pills / tablets distributed by Defendant in this case. Accordingly, Defendant knowingly distributed fentanyl that was deceptively marked with an FDA-authorized imprint for another substance, a fact she well knew based upon her own admissions that the pills looked like Percocet.

Defendant suggests she did not meet the actus reus in this case because she did not misrepresent the pills to anyone. However, Defendant was not required to overtly misrepresent them to her direct purchasers or anyone else. She need only "market" them

as another substance knowing they contained fentanyl. In this case, she did so by distributing pills / tablets containing a legitimate, FDA-authorized imprint for another substance but that actually contained fentanyl.

"Marketing" simply means "the act or process of selling or purchasing in a market." See https://www.merriam-webster.com/dictionary/marketing. The Supreme Court agrees. See Asgrow Seed Co. v. Winterboer, 513 U.S. 179, 187 (1995) ("Marketing ordinarily refers to the act of holding forth property for sale, together with the activities preparatory thereto.") Marketing, in the context of this upward adjustment, does not require overt misrepresentation; otherwise, the use of the word "misrepresentation" in the Guideline would be superfluous.

A Court employs basic rules of statutory construction when interpreting the Sentencing Guidelines. United States v. Stimac, 40 F.4th 876, 880 (8th Cir. 2022). Pursuant to the canon against superfluity, proper respect for Congress cautions courts against lightly assuming that any of the statutory terms it has chosen to employ are "superfluous" or "void" of significance. Department of Agriculture Rural Development Rural Housing Service v. Kirtz, 601 U.S. 42, 53 (2024); see also Cody v. Hillard, 304 F.3d 767, 776 (8th Cir. 2002) (courts should not interpret one provision "in a manner that renders other sections of the same statute inconsistent, meaningless, or superfluous."). Accordingly, this Court should not require overt or active misrepresentation by a defendant who distributes pills or tablets, knowing they contain fentanyl, that are marked with a pharmaceutical imprint for another substance.

In United States v. Matthews, 155 F.4th 845 (6th Cir. 2025), the Sixth Circuit Court of Appeals rejected a similar argument by a defendant as to application of USSG § 2D1.1(b)(13). In Matthews, the district court applied § 2D1.1(b)(13) to two defendants guideline calculations. Id. These two defendants argued the district court procedurally erred by doing so. Id. The Sixth Circuit first identified the difference between "misrepresentation" and "marketing." Id. at 851. The Court said "[m]isrepresent" ordinarily means "to represent wrongly or imperfectly; to give a false or misleading representation of." Id. The Court noted a misrepresentation commonly takes the form of spoken or written words. Id. On the other hand, "marketing," according to the Supreme Court, ordinarily refers to the act of holding forth property for sale, together with the activities in preparatory thereto. Id.

Using these ordinary meanings, the Sixth Circuit determined a person "knowingly misrepresents" fentanyl as another substance when he, being aware that the substance he distributes contains fentanyl, **asserts or communicates** to the person to whom he distributes that it does not. Id. at 851. If the distributor is unaware that the substance contains fentanyl, then he has not acted knowingly. Id. And, without a false or misleading assertion – **through written or spoken words** – about the contents of the substance, there can be no misrepresentation. Id.

However, a person "knowingly markets" fentanyl as another substance when he **sells or advertises** it as something else despite his awareness that the substance contains fentanyl. Id. No additional, overt misrepresentation is necessary. For defendant Livingston, the Court determined the upward adjustment applied and that Livingston had

5

the requisite mental state because he admitted he knew the pills contained fentanyl, and the evidence revealed that he **marketed**, or sold, the pills as something else simply because the pills were designed to resemble oxycodone pills. Id. No further proof was necessary to demonstrate defendant knowingly marketed the fentanyl pills as another substance.

Thus, Defendant's argument that she must make some overt representation to the buyer that the pills are something other than fentanyl before the upward adjustment is applied is simply wrong. Marketing those pills as another legitimately manufactured substance suffices. That conduct implicitly creates deception. The fact that the pills / tablets have the markings, or imprint, of a legitimately manufactured prescription drug other than fentanyl therefore suffices, regardless of any written or spoken communication by Defendant.

Defendant's conduct also meets the mens rea ("knowingly") for application of the upward adjustment. Here, Defendant admittedly knew the pills being distributed contained fentanyl. (PSR, Addendum) More importantly, she acknowledged she was aware the pills had characteristics that made them look like oxycodone pills (blue, stamped with "M30"). Id. Therefore, she clearly knew these pills were deceptively marked with the imprint of a substance other than fentanyl.

The knowledge of the purchasers of these drugs is of no consequence to application of this upward adjustment. The Sentencing Commission directed courts to focus on the knowledge of the defendant, not the purchasers of the substance. See USSG, Supplement to Appendix C, Amendment 807 (effective Nov. 1, 2018). To that end, the

Commission indicated, "[i]f an offender does not know the substance contains fentanyl or a fentanyl analogue, the enhancement does not apply. The specific offense characteristic includes a mens rea requirement to ensure that only the most culpable offenders are subjected to these increased penalties." Id.

Even assuming Defendant's direct customers believed the pills distributed were fentanyl, the Sentencing Commission sought to curb the risk to an unknowing user, even those who may be downstream from a defendant's direct customers. See USSG, Supplement to Appendix C, Amendment 807 (effective Nov. 1, 2018) ("Because of fentanyl's extreme potency, the risk of overdose death is great, particularly when the user is inexperienced or unaware of what substance he or she is using.") Once an individual, like Defendant, places a deceptively imprinted fentanyl pill into the stream of commerce, a risk exists that an inexperienced or unaware individual, whether a direct purchaser or someone further down the line, will acquire and ingest the same and suffer harm. This "marketing" creates deception by itself and is one of the circumstances the Sentencing Commission intended an increased penalty to apply.

Accordingly, the Court should deny Defendant's objection and apply the upward adjustment in USSG § 2D1.1(b)(13)(A) as noted in the PSR.

STATUTORY SENTENCING FACTORS – 18 U.S.C. § 3553(a)

The Court must consider the Guideline sentencing range but it is permitted to tailor the sentence in light of the other statutory concerns as well. See United States v. Wingate, 415 F.3d 885, 888 (8th Cir. 2005). Other statutory factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed -
   (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B)  to afford adequate deterrence to criminal conduct;
   (C)  to protect the public from further crimes of the defendant; and,
   (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
. . . .
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and,
(7) the need to provide restitution to any victims of the offense.

See 18 U.S.C. § 3553(a).

District courts should begin all sentencing proceedings by correctly calculating applicable Guidelines range, then afford both parties opportunity to argue for whatever sentence they deem appropriate, and thereafter, it should consider all statutory sentencing factors to determine whether they support sentence requested by party. United States v. One Horn, 62 F.4th 461, 463 (8th Cir. 2023).

The United States will provide its specific sentencing recommendation at the sentencing hearing.

Dated this 20th day of February, 2026.

                                NICHOLAS W. CHASE
                                United States Attorney

By:   */s/ Rick L. Volk*
       RICK L. VOLK
       Assistant United States Attorney
       P. O. Box 699
       Bismarck, ND  58502-0699
       (701) 530-2420
       N.D. Bar Board ID No. 04913
       Attorney for United States